UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

CARMEN CHACHA,

                      Plaintiff,

         -against-

NUEVA ERA FLOWER CORP. and MARIA ROMERO,

                    Defendants.

---------------------------------------------------------------- x

***AMENDED*** REPORT AND RECOMMENDATION[1]

23-CV-3367 (AMD)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

        Plaintiff Carmen Chacha sued Defendants Nueva Era Flower Corporation ("Nueva")

and Maria Romero, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201 *et seq*., the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq*.,

the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and

the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*

(*See generally* Am. Compl., ECF No. 14.)[2]  Before the Court is Plaintiff's second motion for

default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule

55.2(b).  (*See generally* Mem., ECF No. 37-9 at 6.)  The Honorable Ann M. Donnelly referred

the motion for report and recommendation.  For the reasons set forth below, the Court

respectfully recommends that Plaintiff's motion for default judgment should be **granted in**

---

[1] This Amended Report and Recommendation supersedes the Report and Recommendation issued on September 5, 2025 (ECF No. 42), which is **vacated and withdrawn** in full.

[2] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.  Citations to the Local Civil Rules are to the Rules effective July 1, 2024, the rules in effect when Plaintiff filed the instant motion.

part as follows: (1) a default judgment should be entered against Nueva; and (2) Plaintiff should be awarded damages as set forth herein.

## I.    **BACKGROUND**

### A.    **Facts**

The following facts are taken from the Amended Complaint, whose well-pleaded allegations are assumed to be true, and the uncontroverted documentary evidence submitted in support of the motion.  *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

Nueva is a New York domestic corporation which operates a 24-hour flower shop in Jackson Heights, New York.  (*See* Am. Compl., ECF No. 14 ¶¶ 8–9, 12, 14.)  At all relevant times, the business had at least two employees and annual sales exceeding $500,000.  (*Id.* ¶ 11.)  Romero "was and still is in active control and management" of Nueva, "regulates the employment of persons employed" by the company, and "acted directly and indirectly in [its] interest."  (*Id.* ¶ 10.)

Plaintiff, a Queens resident, worked for Nueva for approximately twenty-six weeks, from October 2021 until April 5, 2022.  (*Id.* ¶¶ 6, 13; *see* Damages Chart, ECF No. 37-4 at 2.)  She performed various tasks—more than a quarter of which involved physical labor—including cleaning, cutting and arranging flowers, and "tending to the cashier."  (Am. Compl., ECF No. 14 ¶¶ 14–15.)  Plaintiff typically worked from 12:00 a.m. to 9:00 a.m., six to seven days per week, though she was often asked to stay as late as 10:00 a.m. or 11:00 a.m.  (*Id.* ¶ 16.)  Plaintiff was paid approximately $12.00 per hour and did not receive overtime compensation for hours worked beyond forty per week.  (*Id.* ¶¶ 19–20.)  She was supposed to be paid every week, but frequently received only a fraction of her wages on payday and would

receive the remainder later. (*Id.* ¶ 24.) Romero occasionally recorded Plaintiff's hours in a notebook, and sometimes directed Plaintiff to sign for her pay. (*Id.* ¶¶ 18, 23.) But she was never provided with paystubs or wage notices and was paid in cash. (*See id.* ¶ 22.) Whenever Plaintiff disputed her wages, Romero "would mention [Plaintiff's] immigration status[,] implying a threat of reporting her to the authorities if she continued to protest." (*Id.* ¶ 25.)

Plaintiff was injured while working in the early morning hours of April 5, 2022. (*Id.* ¶ 27.) To clean some out-of-reach shelves, Plaintiff was standing on an upside-down plastic bucket when the bucket slipped from underneath, causing her to fall. (*Id.* ¶ 29.) Plaintiff suffered injuries to her left arm, right leg, lower back, and head. (*Id.*; *see also id.* ¶ 31.) She was taken to the emergency room by ambulance and left the following afternoon; her discharge papers noted she needed to take a few days off work and needed physical therapy. (*Id.* ¶ 30.) After a six-week leave of absence, Plaintiff called her employer and stated she was ready to return to work with reasonable accommodations. (*See id.* ¶¶ 32–34.) "However, Plaintiff's employer explained that she would still need to lift objects and stock the shelves, and that if she was unable to do those tasks, her employment would be terminated." (*Id.* ¶ 34.) Defendants did not engage in an interactive process regarding reasonable accommodations. (*See id.* ¶ 35.) Defendants then terminated Plaintiff. (*Id.* ¶ 37.)

Plaintiff alleges that Defendants did not pay her minimum wages or overtime wages, did not pay her wages timely, did not provide her required wage statements and notices, and retaliated against her for complaining about unlawful pay practices. (*Id.* ¶¶ 38—80, 106–14.). Plaintiff also alleges that Defendants discriminated and retaliated against her for seeking reasonable accommodations for her disability. (*Id.* ¶¶ 81–105.)

### B.    Procedural History

Plaintiff initiated this action on January 27, 2023 and filed an Amended Complaint on May 15, 2023.  (*See generally* Compl., ECF No. 1; Am. Compl., ECF No. 14.)  Plaintiff served the summons and Amended Complaint on Nueva on May 24, 2023 and on Romero on May 30, 2023.  (*See* Nueva Aff., ECF No. 21; Romero Aff., ECF No. 22.)  At Plaintiff's request, after Defendants failed to appear or otherwise respond to the Amended Complaint, the Clerk of Court entered a certificate of default against both Defendants on September 5, 2023.  (*See* ECF No. 26.)

Plaintiff filed her first motion for default judgment on November 29, 2023.  (*See* ECF No. 28.)  After the Court identified several deficiencies with the motion (*see* July 12, 2024 Order), Plaintiff stated her intention to withdraw the motion and the Court denied it as moot.  (*See* July 30, 2024 R. & R., *adopted by* Aug. 14, 2024 Order Adopting R. & R. (ECF No. 36).)  On September 10, 2024, Plaintiff filed the instant motion.  Judge Donnelly referred the motion for report and recommendation.  (*See* Sept. 12, 2024 Order Ref. Mot.)  To date, Defendants have not appeared in this case or responded to Plaintiff's motion.

## II.    <u>STANDARD FOR DEFAULT JUDGMENT</u>

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all

other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default judgment motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "'[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'" *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

## III.   JURISDICTION AND VENUE

### A.   Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)). It is Plaintiff's burden to establish subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b). *See* 28 U.S.C. § 1331.

Plaintiff relies solely on supplemental jurisdiction to support her state law claims.  (*See* Am. Compl., ECF No. 14 ¶ 3.)  Where, as here, a federal court has original jurisdiction over one or more claims in a case, it may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  To form part of the same "case or controversy" under Article III, "the federal claim and state claim must stem from the same 'common nucleus of operative fact[.]'" *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).  "In determining whether two disputes arise from a common nucleus of operative fact, we have traditionally asked whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the Court."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (cleaned up).

Here, Plaintiff pleaded two distinct types of claims: (1) wage-and-hour claims under the FLSA and NYLL, including a NYLL retaliation claim (Counts I–V and VIII); and (2) disability discrimination claims under the NYSHRL and NYCHRL (Counts VI and VII). The NYLL wage-and-hour claims undoubtedly arise out of the same facts as the FLSA claim because they all relate to Defendants' failure to pay Plaintiff her lawful wages. *See Montefiore*, 642 F.3d at 332.  Though a closer call, the Court finds that the NYLL retaliation claim also arises out of the same facts as the FLSA claims, because Defendants' retaliation, if proven, could support an inference that Defendants did not have a good faith basis for believing that their conduct complied with the FLSA—a valid defense for an employer to avoid liability under the statute.  *See* 29 U.S.C. § 259 ("[If] [the employer] pleads and proves that the act or

6

omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation . . . [s]uch a defense, if established, shall be a bar to the action[.]"); *id.* § 260 ("[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith . . . the court may, in its sound discretion, award no liquidated damages[.]"); *see also Callender v. Panabori Food Corp.*, No. 16-CV-7152 (PKC)(DF), 2018 WL 4565876, at *5 n.9 (S.D.N.Y. July 11, 2018) (finding that NYLL retaliation claim arose from same facts as FLSA wage-and-hour claim), *adopted by* 2018 WL 3728931 (S.D.N.Y. Aug. 6, 2018); *cf. Thompson v. Urb. Recovery House, LLC*, No. 20-CV-9581 (PGG)(JLC), 2022 WL 589957, at *7 (S.D.N.Y. Feb. 28, 2022) (finding that NYLL retaliation claim did not arise from same facts as FLSA wage-and-hour claim where NYLL retaliation claim was based on employee complaining about colleague not complying with COVID protocols), *adopted sub nom. by Thompson v. Elev8 Ctr. New York, LLC*, No. 20-CV-9581 (PGG), 2022 WL 4547411 (S.D.N.Y. Sept. 29, 2022).

Where, however, "a plaintiff's FLSA claim constitutes the sole predicate for original subject matter jurisdiction, district courts in this Circuit routinely dismiss, on jurisdictional grounds, state and local discrimination and retaliation claims, as insufficiently related to the FLSA claim." *Brito v. ATA Freight Line, Ltd.*, No. 20-CV-3132 (EK), 2021 WL 7830146, at *4 (E.D.N.Y. Aug. 24, 2021) (collecting cases); *see Campbell v. Canarsie Plaza Liquor Warehouse Corp.*, No. 19-CV-7125 (EK)(RER), 2022 WL 4539027, at *5 (E.D.N.Y. July 28, 2022) (recommending dismissal of NYSHRL and NYCHRL age discrimination claims where federal jurisdiction was predicated on a FLSA wage-and-hour claim), *adopted by* 2022 WL 4539674 (E.D.N.Y. Sept. 28, 2022); *Deac v. Il Postino, Inc.*, No. 12-CV-5952 (NGG), 2014 WL 4437311, at *9 (E.D.N.Y. Aug. 15, 2014) ("Courts . . . routinely hold that the employment

relationship is itself insufficient to constitute a common nucleus of operative fact[.]"), *adopted as modified by* 2014 WL 4437314 (E.D.N.Y. Sept. 8, 2014).

Accordingly, the Court respectfully recommends that Plaintiff's NYSHRL and NYCHRL disability discrimination claims (Counts VI and VII) should be dismissed without prejudice for lack of subject matter jurisdiction.[3]

### B.  Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s]." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

The Court has personal jurisdiction over Defendants.  *First*, Plaintiff properly served Nueva by delivering copies of the Summons and Amended Complaint to the New York Secretary of State.  (*See* Nueva Aff., ECF No. 21.)  This method of service on a corporation complies with federal and state procedural rules.  Fed. R. Civ. P. 4(h)(1)(A)–(B), (e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1).  Plaintiff also properly served Romero by delivering a copy of the Summons and Amended Complaint to a person of suitable age and

---

[3] Moreover, even if the Court were to consider an alternative basis for jurisdiction—such as diversity jurisdiction under 28 U.S.C. § 1332—Plaintiff has failed to allege the requisite predicate facts, including the domiciles of both Plaintiff and Defendant Romero.

discretion at Romero's actual place of business at 90-02 Roosevelt Avenue in Jackson Heights (the address of the flower shop where Plaintiff alleges Romero managed and controlled employees) and by mailing a copy of the Summons and Amended Complaint to the same location.  (*See* Romero Aff., ECF No. 22; Am. Compl., ECF No. 14 ¶¶ 9–10.)  This service method follows federal and state rules for service on an individual.  Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2).

*Second*, the Court has general jurisdiction over Nueva, because it is a "New York corporation[] 'doing business' in New York." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  Though Plaintiff does not allege Romero's domicile, the Court would have general jurisdiction over her if she was domiciled in New York. *See Francis*, 2018 WL 4292171 at *3.  If she was not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under [N.Y.] C.P.L.R. § 301, or specific jurisdiction, under [N.Y.] C.P.L.R. § 302." *Weitsman v. Levesque*, No. 17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up).  Romero conducts business within the state and "is in active control and management of Nueva" (Am. Compl., ECF No. 14 ¶ 10), which sufficiently establishes specific jurisdiction. *Weitsman*, No. 17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3.

*Third*, "[s]ince jurisdiction is proper for all Defendants under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3.  Each defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal

jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

For these reasons, the Court has personal jurisdiction over Defendants.

### C. Venue

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Venue is proper in this district because the failure to pay wages alleged in the Amended Complaint occurred during Plaintiff's employment in Jackson Heights, Queens. (Am. Compl., ECF No. 14 ¶¶ 9, 13, 26.)

## IV.   PROCEDURAL COMPLIANCE

Although Plaintiff has demonstrated substantial compliance with the requirements for default judgment motions and took the necessary procedural steps to provide notice to Nueva, she has not made this showing with respect to Romero. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules.") (cleaned up).

Plaintiff's submission complies with Local Civil Rules 55.2(a)(1)–(2) and 55.2(c) by including a notice of motion (Loc. Civ. R. 7.1(a)(1)); a memorandum of law in support of the motion (Local Civ. R. 55.2(a)(2)); an affidavit and exhibit showing that the Clerk of Court has entered default against all Defendants (Local Civ. R. 55.2(a)(1)(A)); a proposed judgment (Local Civ. R. 55.2(a)(2)); and a damages chart and memorandum of law, showing the proposed damages and basis for each element of damages (Local Civ. R. 55.2(c)). *See Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL

1018791, at *4 (E.D.N.Y. Mar. 16, 2022) (listing similar submissions as compliant with the Local Civil Rules), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

However, Plaintiff has not complied with Local Civil Rule 55.2(a)(3) for each Defendant. A default judgment movant must submit a certificate of service stating that "all documents in support of the request" have been personally served on or mailed to the last known business address for corporations and the last known residential address for individuals. Loc. Civ. R. 55.2(a)(3). The docket reflects that Plaintiff served Nueva with the motion notice, Gourarie Declaration (ECF No. 37-1), and Memorandum of Law (ECF No. 37-9)—but not the remaining documents in support of the motion—through the New York Secretary of State. (*See* ECF No. 41.) The Court finds that Plaintiff's method of service on Nueva was sufficient for purposes of Local Rule 55.2(a)(3), and that the papers served on Nueva, though incomplete, substantially complied with the Local Rules. But after carefully reviewing the record, the Court finds that Plaintiff has not established that she served Romero at her home address as required. The Court declines to excuse this deficiency. "Service of the motion on non-appearing defendants is of particular importance, because mailing notice of such an application is conducive to both fairness and efficiency." *Colledge v. Steelstone Grp., LLC*, No. 22-CV-2873 (EK)(RER), 2023 WL 5152300, at *4 (E.D.N.Y. June 16, 2023) (cleaned up) (quoting *Miss Jones, LLC v. Viera*, No. 18-CV-1398 (NGG)(SJB), 2019 WL 926670, at *4 (E.D.N.Y. Feb. 5, 2019)), *adopted by* 2023 WL 5759191 (E.D.N.Y. Sept. 5, 2023). Moreover, Plaintiff was on notice about the Local Civil Rule requirements because the Court twice directed Plaintiff to serve all the motion papers on both Defendants. (*See* Sept. 6, 2023 Order; July 12, 2024 Order.) "Failure to comply with Local Rule 55.2(c) warrants denial of a motion for default judgment without prejudice." *Colledge*, 2023 WL 5152300 at *4. Because Plaintiff

11

failed to serve Romero with the motion papers and has not provided any justification for this omission, the Court respectfully recommends that Plaintiff's motion should be denied without prejudice with respect to Romero.

Even if Plaintiff had served Romero with the default judgment motion papers, Plaintiff's motion should still be denied as to Romero for failure to comply with the Servicemembers Civil Relief Act ("SCRA").  Pursuant to the SCRA, "[i]n a default judgment action, a plaintiff is required to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit."  *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)).  After Plaintiff's first default judgment motion, the Court identified non-compliance with the SCRA as grounds for denying default judgment.  (*See* July 30, 2024 R. & R. (citing *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH), 2024 WL 1270816, at *3 (E.D.N.Y. Mar. 26, 2024) (denying a motion for default judgment in part due to Plaintiff's failure to allege facts showing efforts to determine whether an individual defendant is a servicemember pursuant to the SCRA)).  In the instant motion, filed less than 30 days after the Court denied Plaintiff's first motion, Plaintiff contends she was unable to ascertain Romero's military status through the SCRA website "because essential identifying information—such as the defendant's birth date, Social Security number, or driver's license number—is not in Plaintiff's possession."  (Mem., ECF No. 37-9 at 13.)  Nevertheless, Plaintiff "reasonably believes" that Romero is not an active duty servicemember based on her "conducting due diligence and research through publicly available resources."  (*Id.*)  But Plaintiff does not state what due diligence she performed or describe what resources she used

to ascertain Romero's military status.  On this record, the Court cannot find Plaintiff's compliance with the SCRA.  *See Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD)(VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021).  Because Plaintiff fails to demonstrate compliance with the SCRA, the Court respectfully recommends that the motion for default judgment against Romero should be denied.  Accordingly, the Court continues its analysis with respect to Nueva only.

## V.    DEFAULT JUDGMENT FACTORS

Courts apply the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment.  *See Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar. 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025).  Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor.  *First*, Nueva's "non-appearance and failure to respond to the [Amended] Complaint or otherwise appear indicate willful conduct." *Tambriz v. Taste & Sabor*, *LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021).  *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a

meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). *Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (cleaned up), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Based on the foregoing, entry of default judgment is permissible against Nueva.

## VI. **LIABILITY**

### A. **Statute of Limitations**

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc*., 995 F.3d 315, 319 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Bocon*, 2025 WL 832730, at *5. In contrast, the NYLL establishes a six-year limitations period for wage claims. N.Y. Lab. Law §§ 198(3), 663(3). "The statute of limitations begins to run when an employee begins to work for the employer." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023). Plaintiff began working for Nueva in October 2021 and commenced this action on January 27, 2023. (*See* Am. Compl., ECF No. 14 ¶ 13.) Therefore, in light of Nueva's default, Plaintiff may recover under the FLSA and NYLL for any claims that accrued since the beginning of her employment.

### B.    FLSA Coverage

"To establish a minimum wage or overtime claim under the FLSA, the Plaintiff[] must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the Plaintiff[] is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *6 (E.D.N.Y. Sept. 26, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH) (E.D.N.Y. Jan. 15, 2025).

### 1.    Employer Subject to the FLSA

The Complaint alleges that Nueva was Plaintiff's employer within the meaning of the FLSA.  (Am. Compl., ECF No. 14 ¶¶ 7, 59.)  An employer includes, "any person"—*e.g.*, an individual or a corporation—"acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a), (d).  "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML) (E.D.N.Y. Sept. 23, 2022); *see* 29 U.S.C. §§ 206, 207.  These two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively.  *Sanchez v. Ms. Wine Shop*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

The enterprise coverage test considers whether the employer has employees "engaged in commerce or in the production of goods for commerce," *i.e.*, it "has employees handling,

selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii); *see also Perry*, 2022 WL 1018791, at *6. The individual test considers whether "the employee is engaged in commerce or produced goods in commerce." *Sarr v. VEP Assocs. LLC*, No. 22-CV-4386 (ENV)(MMH), 2024 WL 1251600, at *3 (E.D.N.Y. Mar. 25, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Sarr v. VEP Assocs. LLC*, No. 22-CV-4386 (ENV)(MMH) (E.D.N.Y. Apr. 15, 2024). "Employees are 'engaged in commerce' within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among several States or between any State and any place outside thereof." 29 C.F.R. § 779.103. Further, "[a]n employee shall be deemed to have been engaged in the production of goods if such employee was employed in . . . handling . . . or in any other manner working on such goods." 29 U.S.C. § 203(j).

*First*, Plaintiff has shown that Nueva was an employer subject to the FLSA under the enterprise coverage test because the Amended Complaint states, albeit in conclusory fashion, that "Defendants have engaged in interstate commerce within the meaning of the FLSA, have employed at least two employees, and have had an annual dollar volume of sales or business done of at least $500,000." (Am. Compl., ECF No. 14 ¶ 11.) *Second*, Plaintiff has demonstrated that she performed work involving the movement of goods in interstate commerce, thereby satisfying the individual coverage test, because she alleges that "Defendants regularly imported flowers from out of state wholesalers" and that Plaintiff's job duties included "cutting and arranging flowers." (*Id.* ¶¶ 11, 14.) These allegations support the reasonable inference that Plaintiff and Nueva engaged in interstate commerce.

## 2.    Employee Subject to the FLSA

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'"  *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)).  The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements.  *See* 29 U.S.C. § 213(a) (listing multiple exemptions).  Whether a plaintiff-employee's activities fall under such exemptions is a question of law.  *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012).

Plaintiff's factual allegations establish that she was engaged in non-exempt employment under the FLSA.[4]  Specifically, the Complaint alleges that Plaintiff was employed to "perform various tasks at the flower shop, including but not limited to sweeping inside and outside the shop, taking out garbage, cutting and arranging flowers and tending to the cashier." (Am. Compl., ECF No. 14 ¶ 14; *see also* Pl.'s Decl., ECF No. 37-8 ¶ 5.)  Employment in positions with similar duties are not exempt from the FLSA.  *See*, *e.g.*, *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-04005 (HG)(SJB) 2023 WL 2542702, at *1, *7 (E.D.N.Y. Feb. 14, 2023) (finding that Plaintiff who performed duties including gardening, grass cutting,

---

[4] Nueva has not appeared in this case to assert or offer any facts to support a finding that Plaintiff is an exempt employee.  *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013) ("A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim.") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

leaf blowing, debris cleaning, and other miscellaneous duties was covered by the FLSA); *Sanchez*, 643 F. Supp. 3d at 368 (finding that a "delivery worker, helper and cleaner" who performed "related miscellaneous duties" was covered by the FLSA); *Vargas v. Jet Peru-Courier Corp.*, No. 15-CV-6859 (RRM)(PK), 2018 WL 1545699, at *6 (E.D.N.Y. Mar. 14, 2018) (finding that Plaintiff, a former "cashier/customer service attendant," was a non-exempt employee under the FLSA), *adopted by* 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018). Therefore, the Court does not find any basis for exempting Plaintiff's employment relationship from the FLSA's provisions and concludes that Plaintiff qualifies for the protections of the FLSA.

### C.    NYLL Coverage

In order to plead a NYLL claim, a plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'" *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190). "Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH), 2024 WL 4271234, at *8 (E.D.N.Y. Sept. 19, 2024) (quoting *Pelgrift v. 335 W. 41st Tavern Inc.*, No. 14-CV-8934 (AJN), 2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017)), *adopted by* Order Adopting R. & R., *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH) (E.D.N.Y. Dec. 5, 2024). Additionally, "[u]nder the NYLL, an employee-employer relationship is established through the degree of control exercised by the purported employer over the employee." *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099 at *8 (E.D.N.

Mar. 24, 2022) (cleaned up) (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  The Court has already determined that Nueva is Plaintiff's employer within the meaning of the FLSA.  (*See* § VI.B., *supra*.)  "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition . . . [Nueva] [is] Plaintiff's employer[] within the meaning of the NYLL" as well.  *Perry*, 2022 WL 1018791, at *7.  Therefore, Plaintiff qualifies for the protections of the NYLL.

### D.    Statutory Violations

In the Amended Complaint, Plaintiff alleges the following causes of action: unpaid minimum wages, in violation of the NYLL (Count I); unpaid overtime wages in violation of the FLSA and NYLL (Counts II and III); failure to provide wage statements and notices (Counts IV and V); NYLL claims for untimely pay (Count VIII); and retaliation for complaining about unlawful compensation practices (Count IX).  (*See id.* ¶¶ 38–80, 106–14.)

### 1.    NYLL Unpaid Minimum Wages (Count I)

Under the NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week."  *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792 (PKC)(MMH), 2024 WL 4184485, at *9 (E.D.N.Y. Sept. 14, 2024) (cleaned up), *adopted by* 2024 WL 4355485 (E.D.N.Y. Sept. 30, 2024).  "An employee bringing an action for unpaid minimum wages under the NYLL has the burden of proving that [she] performed work for which [she] was not properly compensated."  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 41 (E.D.N.Y. 2015) (cleaned up).  A plaintiff may sufficiently establish minimum wage violations through an affidavit or declaration stating the number of hours worked.  *Marina's Bakery*, 2022 WL 875099, at *10.  "'If the defendant has defaulted, however, the court may presume that the plaintiff's

recollection and estimates of the hours he or she worked are accurate.'"  *Tzilin*, 2024 WL 4309775, at *9 (quoting *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 119 (E.D.N.Y. 2023)).

As an initial matter, the Court must determine the applicable minimum wage rates Plaintiff is entitled to recover.  *Marina's Bakery*, 2022 WL 875099, at *9.  Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment.  *See* N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 142-2.1(a).  Plaintiff alleges that Nueva employed at least two employees during her period of employment from October 2021 to April 2022.  (*See* Am. Compl., ECF No. 14 ¶ 13.)  Nueva is thus classified as a "small employer" and is subject to the New York City rates for minimum wage.  N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1)(ii).  During the relevant period, this category of employer was subject to a $15.00 per hour minimum wage.  *See id.*

Plaintiff alleges she was paid approximately $12.00 per hour throughout her employment, or $3.00 less per hour than the applicable minimum wage.  (*See* Am. Compl., ECF No. 14 ¶ 19; Pl.'s Decl., ECF No. 37-8 ¶ 8.)  Accordingly, the Court respectfully recommends that Nueva should be liable for violations of the NYLL's minimum wage provisions.

### 2.    FLSA & NYLL Unpaid Overtime Wages (Counts II & III)

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which [she] is employed.'"  *Dejesus*, 726 F.3d at 88 (cleaned up) (quoting 29 U.S.C. § 207(a)(1)).  The NYLL includes the same requirement, providing that eight hours constitutes a "legal day's work." N.Y. Lab. Law § 160. "[I]n order to state a plausible FLSA and NYLL overtime claim, a plaintiff must sufficiently

allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Cortese v. Skanska Koch, Inc.*, No. 21-473, 2023 WL 8368858, at *3 (2d Cir. Dec. 4, 2023) (summ. order) (cleaned up) (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiff sufficiently establishes that Nueva failed to pay her the requisite overtime pay. Plaintiff claims that she worked approximately 65 hours per week but was never paid overtime. (*See* Am. Compl., ECF No. 14 ¶¶ 16, 20; Pl.'s Decl., ECF No. 37-8 ¶¶ 6–7; Damages Chart, ECF No. 37-4 at 2.) Plaintiff testifies that she typically worked midnight to 9:00 a.m., six to seven days per week, and was rarely given any breaks other than a brief breakfast. (*See* Pl.'s Decl., ECF No. 37-8 ¶¶ 6, 10.) Despite working more than 40 hours per week, Plaintiff was only paid $12.00 per hour for all hours worked. (*See* Am. Compl., ECF No. 14 ¶¶ 19–20.) The Court therefore respectfully recommends that Nueva should be liable for failure to pay overtime under the FLSA and NYLL. *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA)(MMH), 2024 WL 924534, at *7 (E.D.N.Y. Mar. 4, 2024), *adopted as modified by* 2024 WL 1342739 (E.D.N.Y. Mar. 29, 2024).

### 3.    NYLL Wage Statements & Notices (Counts IV & V)

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip,

meal, or lodging allowances;" "the regular pay day designated by the employer;" and the employer's address and telephone number. N.Y. Lab. Law § 195(1)(a). The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked." *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195(3)).

"[A] technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc*., No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) ("*Guthrie I*") (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023)) ("*Guthrie II*"), *aff'd*, 113 F.4th 300, 310–11 (2d Cir. 2024) ("*Guthrie III*"). "To establish [Article III] standing, a plaintiff must show (i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To plausibly allege a WTPA violation, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm," *Guthrie III*, 113 F.4th at 308, and "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* at 307 (quoting *TransUnion*, 594 U.S. at 442, which in turn quotes *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). In other words, the plaintiff-employee must support a plausible 'theory as to *how* [she] was injured by [the] defendants'

failure to provide the required documents.'"  *Tzilin*, 2024 WL 4309775, at *11 (quoting *Guthrie III*, 113 F.4th at 309).

Here, "[t]hough the deficiencies in [Nueva's] provisions of hiring notices may amount to violations of the labor law, neither Plaintiff nor the record demonstrate[] how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court" or the Second Circuit.  *Guthrie II*, 2023 WL 2206568, at *6.  Plaintiff alleges that Nueva did not provide "accurate wage statements" or "a notice of the rate or rates of pay and basis thereof" and that this conduct "constitutes willful violations of the NYLL and/or its regulations."  (Am. Compl., ECF No. 14 ¶¶ 70–72, 77–79; *see also* Pl.'s Decl., ECF No. 37-8 ¶¶ 12–13.)  However, "[w]ithout plausible allegations that [Plaintiff] suffered a concrete injury because of [Nueva's] failure to provide the required notices and statements, [Plaintiff] lacks standing to sue for that statutory violation." *Guthrie III*, 113 F.4th at 311.

The Court thus respectfully recommends that Plaintiff's claims for Nueva's alleged violations of the NYLL's wage notice and wage statement provisions should be dismissed without prejudice for lack of standing.

### 4.    NYLL Untimely Pay (Count VIII)

The NYLL requires employers to pay manual workers "weekly and not later than seven calendar days after the end of the week in which the wages are earned."  N.Y. Lab. Law § 191(1)(a)(i); *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA)(RER), 2015 WL 790060, at *4 (E.D.N.Y. Feb. 24, 2015).  The NYLL defines a manual worker as a "mechanic, workingman or laborer."  N.Y. Lab. Law § 190(4).  "The New York Department of Labor has elaborated on this terse definition" to include "employees who spend more than 25 percent of

their working time performing 'physical labor,'" which includes "a wide range of physical activities." *Krawitz v. Five Below, Inc.*, No. 22-CV-2253 (LDH)(ARL), 2023 WL 6385711, at *3 n.4 (E.D.N.Y. Sept. 29, 2023) (citing N.Y. Dep't of Labor Op. Ltr. No. RO-09-0066 (May 21, 2009)).

Courts in the Second Circuit have consistently held that the late payment of wages is a concrete harm sufficient to meet the Article III "injury-in-fact" requirement. *Garcia v. Skechers USA Retail, LLC*, No. 23-CV-1055 (PKC)(JAM), 2024 WL 1142316, at *3 (E.D.N.Y. Mar. 15, 2024) (collecting cases). "This is because 'the loss of the time value of money owed to plaintiff is not a harm that might occur, but one that has occurred.'" *Zachary v. BG Retail, LLC,* 716 F. Supp. 3d 339, 345 (S.D.N.Y. 2024) (quoting *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 64 (S.D.N.Y. 2023)); *see also Levy v. Endeavor Air Inc.*, 638 F. Supp. 3d 324, 329 (E.D.N.Y. 2022) ("[T]he harm plausibly pleaded here by plaintiffs as resulting from the violation of § 191 is actualized"), *recons. denied*, *Levy v. Endeavor Air Inc.*, No. 21-CV-4387 (ENV)(JRC), 2024 WL 1422322 (E.D.N.Y. Mar. 29, 2024).

The Amended Complaint's allegations describe "not a harm that *might* materialize, but one that *has* materialized." *Levy*, 638 F. Supp. 3d at 329. First, Plaintiff establishes her status as a manual worker because she spent more than 25 percent of her time performing "duties that were physical in nature—such as cleaning, taking our [sic] garbage, and making flower arrangements[.]" (Am. Compl., ECF No. 14 ¶ 15.) *See Camillo v. Khim's Millennium Mkt., Inc.*, No. 22-CV-7846 (AMD)(PK), 2025 WL 951265, at *11 (E.D.N.Y. Mar. 13, 2025) ("Plaintiffs have established that they were manual workers, as they performed physical labor such as cleaning, chopping fruits and vegetables, cutting meat and cheese, and stocking shelves for more than 25% of each workday.") (internal quotation marks omitted), *adopted by* 2025

WL 948125 (E.D.N.Y. Mar. 28, 2025).  Second, Plaintiff asserts that she "frequently . . . would only receive a fraction of her wages on payday and would receive the remaining amount at a later date."  (Am. Compl., ECF No. 14 ¶ 24.)  In other words, "[t]he delay in receiving wages stripped plaintiff[] of the opportunity to use funds to which [she was] legally entitled."  *Levy*, 638 F. Supp. 3d at 330.  "Certainly, in accordance with the Supreme Court's instructions in *TransUnion*, this is an injury sufficiently analogous to harms traditionally recognized at common law."  *Id.*; *see also Espinal v. Sephora USA, Inc.*, No. 22-CV-3034 (PAE) (GWG), 2024 WL 4241537, at *3 n.3 (S.D.N.Y. Sept. 19, 2024) ("the direct and immediate economic harm experienced by an employee who does not timely receive pay is a classically cognizable injury-in-fact") (citing *TransUnion*, 594 U.S. at 425), *reconsid. denied*, 2024 WL 4751279 (S.D.N.Y. Nov. 12, 2024).  On that basis, Plaintiff sufficiently establishes Article III standing to contest Nueva's failure to timely pay wages under NYLL § 191.

That said, "New York courts are currently split on whether [NYLL] § 198(1-a) expressly provides a private right of action for a manual worker who is paid biweekly in violation of [NYLL] § 191(1)(a) to recover liquidated damages."  *Sarmiento v. Flagge Contracting Inc.*, No. 22-CV-9718 (VSB)(JLC), 2024 WL 806137, at *9 (S.D.N.Y. Feb. 27, 2024) (discussing *Grant v. Glob. Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117 (2d Dep't 2024), which concluded that NYLL § 198 does not confer a private right of action to recover wages paid late) and *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019), which holds that NYLL § 198(1-a) "expressly provides a private right of action for a violation of Labor Law § 191"), *adopted by* 2024 WL 1908607 (S.D.N.Y. May 1, 2024).  "The New York Court of Appeals has not yet resolved this question."  *Cheng v. Wong*, No. 24-CV-1507 (ARR)(LB), 2025 WL 2505542, at *5 (E.D.N.Y. Sept. 2, 2025) (citing *Cooke v. Frank*

*Brunckhorst Co.*, LLC, 734 F. Supp. 3d 206, 217 (E.D.N.Y. 2024)).  But recently, Section 198(1-a) was amended to allow for liquidated damages for violations of Section 191.  See *Lopez v. J&L Sky Contractors Corp.*, No. 24-CV-7661, 2025 WL 1859690, at *17 (E.D.N.Y. July 7, 2025) (citing Act of May 9, 2025, Ch. 56, 2025 N.Y. Laws S. 3006-C and noting that "NYLL § 198(a-1) now explicitly states that it provides a private cause of action for violations of Section 191(a)").

Therefore, the Court respectfully recommends that Nueva should be liable for failure to timely pay Plaintiff her wages.

### 5.    NYLL Retaliation (Count IX)

NYLL's antiretaliation provision states in relevant part:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of [the NYLL].

N.Y. Lab. Law § 215(1)(a).  "In order to state a claim under New York Labor Law Section 215, a plaintiff must adequately plead that while employed by the defendant, he or she made a complaint about the employer's violation of [the NYLL] and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result." *Higueros v. New York State Cath. Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011).  While the employee's complaint "need not make explicit reference" to the NYLL to trigger Section 215's protections, N.Y. Lab. Law § 215(1)(a), "a plaintiff must plead a nexus between the employee's complaint and the allegedly retaliatory action by the

employer." *Shibetti v. Z Rest., Diner & Lounge, Inc.*, No. 18-CV-856 (ERK) (ST), 2019 WL 11624313, at *10 (E.D.N.Y. Aug. 30, 2019) (cleaned up).

Plaintiff plausibly alleges a Section 215 claim. Plaintiff alleges that "whenever [she] had a question or objection to her wages, Defendant Romero would mention her immigration status[,] implying a threat of reporting her to the authorities if she continued to protest." (Am. Compl., ECF No. 14 ¶ 25.) Under Section 215, "to threaten, penalize, or in any other manner discriminate or retaliate against any employee" includes threatening to contact federal immigration authorities or threatening to report an employee's suspected citizenship or immigration status, to a federal, state or local agency. N.Y. Lab. Law § 215(1)(a); *Porter v. MooreGroup Corp.*, No. 17-CV-7405 (KAM)(VMS), 2020 WL 32434, at *11 (E.D.N.Y. Jan. 2, 2020) ("[C]ourts in the Second Circuit have recognized actionable retaliation claims in situations involving either employment-related harm or a threatened legal claim, including threatening immigration-related consequences[.]") (collecting cases) (cleaned up). Construing these facts in Plaintiff's favor, but for Plaintiff's oral complaints about whether she was appropriately paid, her manager Romero (acting as Nueva's agent) would not have mentioned Plaintiff's immigration status. References to Plaintiff's immigration status are thus an "adverse employment action" causally connected to her complaints because they would have discouraged Plaintiff from pursuing her rights under the NYLL. *See Perez v. Jasper Trading, Inc.*, No. 05-CV-1725 (ILG)(VVP), 2007 WL 4441062, at *3 (E.D.N.Y. Dec. 17, 2007) (finding that defendants were liable for retaliation under Section 215 where "defendants threatened to contact governmental and immigration authorities if the plaintiffs continued to demand just compensation").

Despite the merits of Plaintiff's claim, it is unclear if she has complied with the anti-retaliation provision's requirement that plaintiffs provide notice to the New York Attorney General before seeking relief under Section 215. *See* N.Y. Lab. Law § 215(2)(b) ("At or before the commencement of any action under this section, notice thereof shall be served upon the attorney general by the employee."). "Though this language appears mandatory, [state and federal] courts are divided as to whether timely notice to the State Attorney General constitutes a condition precedent to any claim for retaliation." *Romero v. Bestcare, Inc.*, No. 15-CV-7397 (JS)(GRB), 2018 WL 1702001, at *4 (E.D.N.Y. Feb. 28, 2018) (collecting cases), *adopted by* 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2018). At least one New York appellate court has held that a plaintiff's failure to serve notice on the Attorney General before filing suit does not preclude a Section 215 claim if the plaintiff provides notice during the litigation. *See Kubersky v. Cameron Indus., Inc.*, 173 A.D.3d 541, 542 (1st Dep't 2019) (finding that plaintiff's failure to serve notice on the attorney general until one year after commencing the action but during the course of litigation did not require dismissal of the suit)[5]; *accord Porter v. MooreGroup Corp.*, No. 17-CV-7405 (KAM)(VMS), 2020 WL 32434, at *13 (E.D.N.Y. Jan. 2, 2020) (finding on motion to amend complaint that Section 215 claim was not futile where plaintiff had notified the attorney general during the course of the litigation). Here,

---

[5] In *Kubersky*, the First Department relied on *Columbia Gas of N.Y., Inc. v. N.Y. State Elec. & Gas Corp.*, 268 N.E.2d 790 (N.Y. 1971), which discussed a similarly worded pre-suit notice requirement in New York General Business Law § 340 and concluded that notice to the New York Attorney General was not a condition precedent to suit under that statute. 173 A.D.3d at 542. Absent binding precedent from the New York Court of Appeals, "[f]ederal courts applying state law 'are generally obliged to follow the state law decisions of state intermediate appellate courts.'" *Charles v. United States of Aritzia Inc.*, No. 23-CV-9389 (MMG), 2024 WL 4167502, at *3 (S.D.N.Y. Sept. 12, 2024) (quoting *Broder v. Cablevisions Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005)).

Plaintiff alleges that Nueva retaliated against her in violation of Section 215 (*see* Am. Compl., ECF No. 14 ¶¶ 25, 111–13) but the record does not include any evidence that she notified the New York Attorney General of this lawsuit at any time.  Because Plaintiff has not yet satisfied the notice requirement as articulated in *Kubersky*, the Court respectfully recommends that Plaintiff's Section 215 claim should be dismissed without prejudice.  However, if Plaintiff should submit proof of service of notice on the New York Attorney General within one week of this Report and Recommendation, then Nueva should be held liable for this claim.

## VII.  **DAMAGES**

As Nueva's liability has been established, the Court turns to evaluate damages.  "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up).  "On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *8 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021).

"That being said, because under [the] FLSA 'the burden is on an employer properly to record hours,' a 'plaintiff need not compute FLSA damages with precision.'" *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quoting *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002)), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).  "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Marina's Bakery*, 2022 WL

875099, at *15; *see also Perry*, 2022 WL 1018791, at *3 ("In the context of a motion for default judgment on FLSA and NYLL claims, the plaintiff's recollection and estimates of hours worked are presumed to be correct.") (cleaned up).

Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned during the same period." *Royal Thai Plus*, 2018 WL 1770660, at *10. Rather, "[a] plaintiff may recover under the statute which provides the greatest amount of damages." *Marina's Bakery*, 2022 WL 875099, at *9. Because the NYLL provides the same or greater recovery than the FLSA at all relevant times during Plaintiff's employment with Defendants, the Court will apply the NYLL for all damages calculations.

As described below, Plaintiff seeks unpaid minimum wages, unpaid overtime wages, liquidated damages, and prejudgment interest. (*See* Mem., ECF No. 37-9 at 8–9, 19; Damages Chart, ECF No. 37-4 at 2.)[6] The Court will address each category of damages in turn and will include Plaintiff's specific requested amounts, if any.

---

[6] The Court will not address Plaintiff's requests for damages for the following claims: (1) disability discrimination and retaliation in violation of the NYSHRL and the NYCHRL, as the Court should decline to exercise jurisdiction over those claims (*see* § III.A., *supra*); and (2) failure to provide wage notices and wage statements, in violation of the WTPA, as these claims should be dismissed for lack of standing (*see* § VI.D.3., *supra*). Further, although the Court recommends that Nueva should be liable for failure to timely pay Plaintiff, the Court will not separately assess damages for this cause of action because they are already being considered within the minimum pay and overtime damages calculations. *See Bocon*, 2025 WL 832730, at *12 n.8. The Court also will not separately assess damages for Plaintiff's NYLL § 215(1) retaliation claim because she does not provide sufficient argument or evidence in the default judgment motion briefing. (*See, e.g.*, Damages Chart, ECF No. 37-4 (listing various categories of damages but none for NYLL retaliation).) Moreover, to the extent that the Court's calculations differ from Plaintiff's due to rounding or other discrepancies, the Court's calculations will govern.

### A.    Minimum Wages

The Court has already determined that Plaintiff was entitled to a minimum wage of $15.00 per hour during her employment and that her actual regular pay was only $12.00 per hour. (*See* § VI.D.1., *supra*.) To calculate minimum wage damages, the Court determines the difference between Plaintiff's regular rate of pay and the minimum wage, multiplied by the number of regular rate hours worked per week, multiplied by the number of weeks worked during the relevant period.

Throughout Plaintiff's 26 weeks of employment, Plaintiff worked approximately 65 hours per week. (*See* Damages Chart, ECF No. 37-4 at 2.) Plaintiff was paid approximately $12.00 per hour. (*See* Am. Compl., ECF No. 14 ¶ 19.) Using the formula described above (($15.00 - $12.00) × 40 hours × 26 weeks), Plaintiff is entitled to **$3,120.00** in damages for unpaid minimum wages.

### B.    Overtime Wages

As noted, "[u]nder both the FLSA and NYLL, [Plaintiff] [is] entitled to overtime compensation of at least one and one-half times [her] regular hourly rate" for hours worked more than forty hours per week. *Marina's Bakery*, 2022 WL 875099, at *16; *Dejesus*, 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'" *Marina's Bakery*, 2022 WL 875099, at *16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 WL 7480358, at *10 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)).

31

Plaintiff is entitled to one-and-one-half times the minimum wage because throughout her employment, her regular pay rate was below the applicable minimum wage of $15.00 per hour. (*See* § VI.D.1., *supra*.) Therefore, the Court will multiply the $15.00 minimum wage by 1.5 to calculate her overtime pay rate of $22.50. *See Marina's Bakery*, 2022 WL 875099, at *16. "Because Plaintiff has already been paid a weekly amount for these hours, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate (minimum wage times 1.5) by the total number of overtime hours worked" per week and multiplied by the number of weeks during the relevant time period. *See Sanchez*, 643 F. Supp. 3d at 377.

Plaintiff worked 65 hours per week, of which 25 hours should have been paid at the overtime rate. The Court calculates her unpaid overtime for this period as **$14,625.00** (*i.e.*, (($22.50 overtime rate – $15.00 minimum wage) × 25 hours × 26 weeks)).

### C.    Liquidated Damages

Plaintiff seeks $35,490.00 in liquidated damages for her minimum wage and overtime claims. (Damages Chart, ECF No. 37-4 at 2.)

Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid overtime, minimum wage, and spread of hours compensation, "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-a)); *see Royal Thai Plus*, 2018 WL 1770660 at *11 ("Under NYLL, liquidated damages are available for both unpaid overtime compensation and spread of hours compensation"). However, the FLSA and the NYLL prohibit "duplicative liquidated damages for the same course of conduct. Double recovery is generally disfavored."

*Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). "In cases where plaintiffs could obtain liquidated damages under either FLSA [or] NYLL, the trend has been to award liquidated damages under whichever statute provides the greater potential recovery." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *13 (E.D.N.Y. Dec. 9, 2019), *adopted by* Order Adopting R. & R., *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB) (E.D.N.Y. Mar. 31, 2020). Here, where Nueva defaulted and therefore makes no showing that it acted in good faith when it underpaid Plaintiff, the greater liquidated damages available under the NYLL are appropriate. Accordingly, the Court respectfully recommends that Plaintiff should be awarded an additional **$17,745.00** in liquidated damages under the NYLL only.[7]

### D. Prejudgment Interest

Plaintiff requests an unspecified amount of prejudgment interest. (Mem, ECF No. 37-9 at 18.)

"It is well settled that in an action for violations of the FLSA prejudgment interest may not be awarded in addition to liquidated damages." *Fermin*, 93 F. Supp. 3d at 48 (cleaned up); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). In contrast, the NYLL enables a plaintiff to recover both liquidated damages and prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 48. Accordingly, Plaintiff is eligible to recover prejudgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per annum. *Ramah*, 2021 WL 7906551, at *10; N.Y. C.P.L.R. § 5004; *Burns v. Scott*, 635 F. Supp. 3d 258,

---

[7] The total includes $3,120.00 in minimum wage damages and $14,625.00 in overtime wage damages. (*See* §§ VII.A.–B., *supra*.)

282 (S.D.N.Y. 2022) ("Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages.") (citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS)(JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012)), *reconsid. denied*, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022) *see also Avedana*, 2021 WL 4255361, at *12 (applying prejudgment interest rate to NYLL claims).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49. Courts generally calculate prejudgment interest in NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *Perry*, 2022 WL 1018791, at *13; *Sanchez*, 643 F. Supp. 3d at 380.

As discussed, the Court recommends that liquidated damages should be awarded under the NYLL, and thus, prejudgment interest may be awarded. (*See* § VII.C., *supra*.) The Court calculates prejudgment interest by determining the midpoint of the relevant period. The Court selects January 4, 2022 as the midpoint between the date Plaintiff's damages claims accrued (approximately October 5, 2021) and Plaintiff's end date of employment (April 5, 2022)) as a reasonable intermediate date. Applying a nine percent per annum rate, the Court respectfully

34

recommends that Plaintiff should be awarded **$4,669.08**[8] in prejudgment interest to increase at a rate of $4.38 per day until entry of judgment.

### E.    Attorneys' Fees

Plaintiff seeks $16,375.00 in attorneys' fees based on 53.7 hours of work by Bell Law Group, PLLC.  (Mem., ECF No. 37-9 at 18; Billing Records, ECF No. 37-5 at 4; Attys' Fees Aff., ECF No. 37-6 at 2–4.)

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions."  *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020).  "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request."  *Perry*, 2022 WL 1018791, at *14.

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Esquivel*, 2023 WL 6338666, at *16.  "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.* (cleaned up).  "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and

---

[8] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages ($17,745.00) by 9%, then dividing by 365, for a daily rate of $4.38.  The daily rate is then multiplied by the number of days between October 5, 2022 and September 5, 2025 (1,066 days).

$70 to $100 for legal support staff in FLSA cases." *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 375647, at *7 (E.D.N.Y. Jan. 3, 2023), *adopted by* 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023)); *but see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 241–43 (E.D.N.Y. 2025) (noting the considerable inflation that has occurred in recent years and the Court's obligation to award attorneys' fees commensurate with current market conditions). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD)(MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *adopted by* 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

The Court finds that the requested hourly rates for partners Chaya Gourarie and Paul Bartels ($450.00), associates Adam P. Grogan and Frank Tantone ($325.00), and paralegal Jayne Calderon ($125.00) are reasonable and substantiated. Attorneys Gourarie and Bartels—respective graduates of Wayne State University Law School and St. John's University School of Law—are partners at Bell Law Group, PLLC, each with over ten years of litigation experience. (Attys' Fees Aff., ECF No. 37-6 at 2.) Attorneys Grogan and Tantone are 2016 graduates of Albany Law School and St. John's University School of Law, respectively, are associates at the firm, and have practiced employment litigation for nearly six years. (*See id.* at 2–3.) The requested hourly rates are commensurate with their training and experience and consistent with what a reasonable client would pay for comparable legal services. *Morales*, 2023 WL 375647, at *7. Additionally, Paralegal Calderon's rate is acceptable—she is a fluent Spanish speaker and thus facilitated communications with Plaintiff because none of the

assigned attorneys have these language skills.  (*See* Attys' Fees Aff., ECF No. 37-6 at 3.) Courts have approved similar paralegal rates for relevant language skills.  *See, e.g.*, *Cohetero v. Stone & Tile, Inc.*, No. 16-CV-4420, 2018 WL 565717, at *5 (E.D.N.Y. Jan. 25, 2018); *accord Torres v. K & T Provisions, Inc.*, No. 20-CV-5642 (WFK)(MMH), 2025 WL 942797, at *4 (E.D.N.Y. Mar. 28, 2025), *adopted by* 2025 WL 1135408 (E.D.N.Y. Apr. 17, 2025).  The Court finds these rates reasonable given the extensive experience of these attorneys and the importance of Paralegal Calderon's language skills.

The Court also finds some but not all rates are reasonable for work done by Priscilla Sandoval, Ashley Grooms, and Jasmine Hernandez.  These legal personnel are listed in the billing records and their hours are included in the total hours requested, but Plaintiff does not submit any information regarding these individuals' professional roles, backgrounds, or experience.  (*See* Attys' Fees Aff., ECF No. 37-6 at 2–4.)  The Court reasonably infers that they are paralegals because the billing records reflect their hourly rate at $125, the same as paralegal Calderon.  (Billing Records, ECF No. 37-5 at 2–3.)  However, at least one entry for Sandoval is billed at $500 per hour.  (*Id.* at 2.)  Given the lack of information about these timekeepers' backgrounds and experience, the Court declines to adopt a $500 hourly rate as unreasonable.  *See Sadowski*, 2023 WL 2707096, at *8 ("The applicant bears the burden to demonstrate reasonableness.").  After closely reviewing the billing records, however, a $125 hourly rate for Sandoval and Hernandez is reasonable because they each performed similar Spanish-language translation skills as Calderon.  (Billing Summary, ECF No. 37-5 at 2 (billing entries in January 2023 stating that Sandoval translated documents for or spoke to Plaintiff); *id.* at 3 (billing entry on April 26, 2023 stating that Hernandez spoke with Plaintiff).)  For Grooms, an hourly rate of $100.00 per hour is reasonable because she performed routine

paralegal tasks (*see id.* at 2–3) and there is no additional information about her skills or experience to justify more than a garden-variety hourly rate. *Esquivel*, 2023 WL 6338666, at *18 (recommending $100.00 hourly rate for paralegal where "Plaintiff's motion papers [did] not state any facts regarding the [identity] or qualifications of the paralegal").

Finally, the Court finds that the number of hours billed in this case by all timekeepers is reasonable. According to the billing records, Bartels, Grogan, Gourarie, and Tantone performed 36.00 hours of work. (*See* Billing Summary, ECF No. 37-5 at 2–4.) This total reflects the various tasks Plaintiff's counsel performed to prosecute this case, including client intake, drafting the Complaint, and filing the instant motion and related documents. (*See id.*) Further, after carefully reviewing the billing records, the Court does not find any particularly dubious or vague time entries—with the exception of duplicate entries by Attorney Gourarie on October 2, 2023 for "Meeting with attorney AG re case and next steps re damages." (*Id.* at 3.) Without more information, the Court cannot conclude that each meeting involved distinct topics sufficient to warrant two separate billing entries.

Based on the foregoing, the following hourly rates and hours billed should be awarded for each timekeeper:

| Timekeeper | Rate | Hours Billed | Total Billed |
|---|---|---|---|
| Adam Grogan | $ 325.00 | 4.1 | $ 1,332.50 |
| Ashley Grooms | $ 100.00 | 4.1 | $ 410.00 |
| Chaya Gourarie | $ 450.00 | 16.8 | $ 7,560.00 |
| Frank Tantone | $ 325.00 | 12.8 | $ 4,160.00 |
| Jasmine Hernandez | $ 125.00 | 0.1 | $ 12.50 |
| Jayne Calderon | $ 125.00 | 9.2 | $ 1,150.00 |
| Paul Bartels | $ 450.00 | 1.8 | $ 810.00 |
| Priscilla Sandoval | $ 125.00 | 4.3 | $ 537.50 |

| Total | 53.2 | $ 15,972.50 |
|-------|------|-------------|

Accordingly, the Court respectfully recommends awarding total attorneys' fees of **$15,972.50.**

### F.    Costs

Finally, Plaintiff requests $597.00 in costs, consisting of the $402.00 filing fee and $195.00 for process server fees. (*See* Mem., ECF No. 37-9 at 8–9, 18; Billing Summary, ECF No. 37-5 at 4.) The Court takes judicial notice of the $402.00 filing fee listed on the docket. The billing records include a line item dated June 2, 2023 for "EXPENSES: Service upon Defendants," but Plaintiff did not submit any documentation for service of process expenses. (*See* 37-5 at 4.) The docket reflects that Plaintiff paid $40.00 for service on Nueva via the New York Secretary of State on May 24, 2023 (ECF No. 21), and the Court accepts that as a substantiated service cost. Accordingly, the Court respectfully recommends awarding **$442.00** in costs.

## VIII.  CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment at ECF No. 37 should be **granted in part** as follows: the Clerk of Court should enter the proposed default judgment as amended[9] against Defendant Nueva Era Flower Corp.; and (2) Plaintiff should be awarded damages of **$56,573.58**, which includes: (a) **$3,120.00** in unpaid minimum wages; (b) **$14,625.00** in unpaid overtime wages; (c) **$17,745.00** in liquidated damages; (d) **$4,669.08** in prejudgment interest, to increase at a

---

[9] The proposed judgment at ECF No. 37-7 should be amended to reflect to be consistent with this Report and Recommendation, if adopted, or the Court's order, if modified.

rate of $4.38 per day until entry of judgment; (e) **$15,972.50** in attorneys' fees; and (f) **$442.00** in costs.  All other requests should be **denied**.

A copy of this Amended Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to mail a copy of this Amended Report and Recommendation to Defendants Nueva Era Flower Corp. and Maria Romero at the following address: 90-02 Roosevelt Avenue, Jackson Heights, NY 11372.  Additionally, by **September 9, 2025**, Plaintiff shall serve a copy of this Amended Report and Recommendation on Defendant Nueva Era Flower Corp. through the New York Secretary of State and shall file proof of service by **September 10, 2025**.

Within 14 days of service, any party may serve and file specific written objections to this Amended Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Donnelly.  If a party fails to object timely to this Amended Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 8, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge